The appellant, Roger Dale Barnett, was convicted of driving under the influence of alcohol (DUI), a violation of §32-5A-191(a)(2), Code of Alabama 1975. He was sentenced to 90 days in jail.
The state's evidence tended to show that on December 4, 1994, the appellant was in actual physical control of his automobile while under the influence of alcohol. Assistant Chief Randy Kizziah of the Brookwood Police Department testified that he and the Tuscaloosa Sheriff's Department had received a dispatch to be on the lookout for a "primer orange" Ford Mustang automobile owned by Roger Dale Barnett, the appellant. He testified that he knew the appellant and that he knew the appellant drove a car that fit that description. A few minutes after receiving that dispatch, Kizziah received a dispatch that the appellant had been at a nearby store causing a problem and that he was very intoxicated. Again, he was told to be on the lookout for the appellant's vehicle. Kizziah testified that he did not go to the scene because he knew where the appellant lived and that the appellant would pass him on the highway if he was going home.
About 45 minutes later, Kizziah was dispatched to the residence of Joey Pate, the appellant's grandson, on a disturbance call. As he approached Pate's residence, he saw the appellant's car parked in front of a store *Page 137 
next door to Pate's residence and about 15 feet off the highway. The appellant was sitting in the driver's seat. Kizziah testified that he called in the appellant's license plate number and confirmed that the car was registered to Roger Dale Barnett, the appellant.
He then walked over to the appellant's car and started talking to him. Kizziah testified that he could smell alcohol on the appellant's breath as he spoke. He asked the appellant to get out of his car. Kizziah testified that the appellant was very unsteady and that he had to use the car to support himself. He further testified that the appellant's eyes were bloodshot, that his face was flushed, and that his clothing was disheveled. Kizziah said that he felt the hood of the appellant's car and that it was still warm.
Kizziah asked the appellant to perform two field sobriety tests, the one-leg stand and walking a straight line. The appellant could not perform either without staggering. The appellant admitted that he had been drinking all day and that he was drunk. Kizziah saw two half-empty bottles of vodka in the appellant's car and the car keys on the dashboard. He got into the car and started it to make sure it was operable. He then placed the appellant under arrest for driving under the influence of alcohol.
The appellant was given an Intoxilyzer 5000 breath test to determine his blood alcohol content at the Tuscaloosa jail. The results of the test stated that his blood alcohol content was .207%.
The appellant testified in his own behalf at trial. He stated that he was drunk that day but that he did not drive his car. He testified that his friend Dale Whitsett drove him to Pate's residence. Whitsett testified that he drove the appellant to Pate's residence.
 I
The appellant first contends that the evidence presented by the state was insufficient to find him guilty of driving under the influence of alcohol.
 "In determining whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, we must accept as true the evidence introduced by the state, accord the state all legitimate inferences therefrom, and view the evidence in the light most favorable to the prosecution. McMillian v. State, 594 So.2d 1253
(Ala.Cr.App. 1991); Faircloth v. State, 471 So.2d 485 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493
(Ala. 1985); Cumbo v. State, 368 So.2d 871
(Ala.Cr.App.), cert. denied, 368 So.2d 877
(Ala. 1979)."
Underwood v. State, 646 So.2d 692, 695 (Ala.Cr.App. 1993).
It is undisputed that the appellant was intoxicated at the time of his arrest. The appellant admitted it under oath at trial. Kizziah testified that the appellant was unable to successfully complete either of the field sobriety tests he administered. Also, the results of his Intoxilyzer 5000 breath test were .207%, well in excess of the .10% level at which one is presumed intoxicated under § 32-5A-194(b)(3), Code of Alabama 1975. This was sufficient evidence from which the jury could find that the appellant was under the influence of alcohol to the extent that it rendered him unable to operate a motor vehicle safely.
The appellant further contends that there was insufficient evidence to prove that he was actually driving the car. However, persons may be found guilty of driving under the influence under § 32-5A-191(a)(2) if they are "in actual physical control of any vehicle" while under the influence of alcohol. It is not necessary to be actually driving in order to be in actual physical control of a vehicle. Sloan v. State,574 So.2d 975, 978 (Ala.Cr.App. 1990). "Actual physical control" is exclusive physical power, and present ability, to operate, move, park, or direct whatever use or non-use is to be made of the motor vehicle at the moment. Cagle v. City of Gadsden,495 So.2d 1144, 1145 (Ala. 1986). Whether one is in "actual physical control" of a vehicle is determined by a totality-of-the-circumstances test. Cagle, 495 So.2d at 1145.
Here, the appellant was sitting in the driver's seat of his car; the keys were on the dashboard, within his reach. Kizziah testified that the car was operable and that the hood was warm. This was sufficient evidence from which the jury could find that the *Page 138 
appellant was in "actual physical control" of the vehicle.Cagle, supra; Sloan, supra; McLaney v. City of Montgomery,570 So.2d 881 (Ala.Cr.App. 1990); Beals v. State, 533 So.2d 717
(Ala.Cr.App. 1988); Davis v. State, 505 So.2d 1303
(Ala.Cr.App. 1987).
Furthermore, there was circumstantial evidence presented from which the jury could have found that the appellant was actually driving his car while under the influence of alcohol.
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis of guilt, but whether a jury might reasonably so conclude."
Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), writ denied, 368 So.2d 877 (Ala. 1979). (Emphasis added.)
Kizziah testified that he had received two radio dispatches reporting that the appellant had been seen driving in the area before Kizziah saw the appellant's car parked at Pate's residence. The jury could have concluded that the evidence presented excluded every reasonable hypothesis except that the appellant had driven his car to Pate's residence. We will not substitute our judgment for that of the jury. Owens v. State,597 So.2d 734, 737 (Ala.Cr.App. 1992).
 II
The appellant next contends that the trial court erred by allowing the results of his Intoxilyzer 5000 breath test to be received into evidence. More specifically, he contends that because he was not arrested on a public highway, the implied consent statute, § 32-5-192, Code of Alabama 1975, does not apply to him.
Section 32-5-192 provides:
 "(a) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, subject to the provisions of this division, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. The law enforcement agency by which such officer is employed shall designate which of the aforesaid tests shall be administered. Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of 90 days; provided if such person objects to a blood test, the law enforcement agency shall designate that one of the other aforesaid tests be administered."
(Emphasis added.)
The appellant bases his contention on this court's holding inLunceford v. City of Northport, 555 So.2d 246
(Ala.Cr.App. 1988). In Lunceford, this court held that when a defendant is arrested for DUI and there is no evidence that he had been driving on a public highway, then the defendant is not subject to the implied consent statute. Lunceford, 555 So.2d at 249-49. Therefore, in that situation a defendant cannot be compelled to submit to a chemical test without his consent. 555 So.2d at 249.
However, this court did not hold in Lunceford that merely being arrested on private property exempts DUI offenders from the implied consent statutes. "The implied consent statute is applicable where the arresting officer has probable cause to believe that the defendant had been driving on a highway even though he did not actually see the defendant drive on the highway." 555 So.2d at 249. Here, Kizziah had received reports that the appellant was driving in the area and that he was intoxicated. Kizziah knew the appellant, knew where he lived, and knew what kind of car he drove. He then *Page 139 
received a dispatch that the appellant was at Pate's house causing a disturbance. This information and Kizziah's personal knowledge supplied him with probable cause to believe that the appellant had been driving on a public highway.
We hold that the trial court did not err by allowing the appellant's Intoxilyzer 5000 test results to be received into evidence.
For the foregoing reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.